[Civ. No. 16512.   Second Dist., Div. Three.   Apr. 5, 1949.]

M. LOUISE MORGAN, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

Haas & Home for Appellant.

Ray L. Chesebro, City Attorney, and John J. Tully, Jr., Assistant City Attorney, for Respondents.

WOOD, J.—The petitioner sought a writ of mandate directing the Board of Pension Commissioners of the City of Los Angeles to grant to her, as the widow of a police officer, a pension pursuant to section 183 of the city charter of Los Angeles. That section provides in part that whenever any member of the police department shall die from sickness caused by the discharge of his duty a pension shall be paid to his widow. Petitioner alleged that the immediate cause of the death of her husband was poliomyelitis contracted by him during the performance of his duties as such police officer. She appeals from the judgment denying her petition.

Appellant contends that the court erred in concluding that the officer did not die from sickness contracted in line of duty. She asserts that the officer contracted poliomyelitis while, in the performance of his duty, he was at the front door of a house talking to a woman therein who had recently rendered nursing services in the house to her son who was afflicted with that disease.

Officer Morgan, petitioner's husband, had been a police officer in Los Angeles for 12 years. Prior to September 21, 1945, there had been several burglaries in a certain district in Los Angeles, and Officer Morgan and Officer Nash were assigned to investigate the burglaries in that district. On September 21, 1945, after having gone to a house within that district where a burglary had occurred, those officers, in the performance of their duty, went to all the houses (about 15) within 3 or 4 blocks of that house. Officer Nash testified that about 4 p.m. of that day he saw Officer Morgan, in the performance of his duty, go up the entrance steps and onto the

porch of the residence of a Mrs. Paschek. While Officer Morgan went to that residence Officer Nash went to a residence next door. Officer Nash also testified that he could not see the door of the Paschek residence from his position at the next residence; that he returned within about eight minutes to their automobile, in front of the Paschek residence, and Officer Morgan was then in the automobile; that Officer Morgan then told him that he had talked to "the mother" at the house where he had been. About September 6, 1945, the son of Mrs. Paschek had become afflicted with poliomyelitis, and from that day until September 8th, when he was taken to the hospital, Mrs. Paschek had taken care of him at that residence. On September 21st, he was discharged from the hospital and he returned home about 4 p. m. The son testified that on said last mentioned day Mrs. Paschek had a slight cold.

About October 1, 1945, Officer Morgan developed a slight cold. He continued to get worse, and was off duty from the 5th to the 10th of October, inclusive, by reason of his illness. On October 11th, he returned to his duties and performed them to and including October 15th. After October 15th, he did not return to his duties. On October 20th, he was admitted to a hospital and his illness was diagnosed as bulbar paralysis due to poliomyelitis. He died from that disease on October 25, 1945.

According to testimony, the incubation period of poliomyelitis varies from 5 to 18 days; a symptom of poliomyelitis is a condition that simulates a head cold; and a person may be infected with the poliomyelitis virus and be infectious but have no symptoms of the disease.

Plaintiff testified that Officer Morgan had been in good health prior to the illness that caused his death; that from September 1st to October 1st, 1945, she and her husband had not gone to any places of amusement or where there were large gatherings of people; and that after June, 1945, they had been at home "almost completely."

Mrs. Paschek testified that she did not remember anyone particularly who came to her house the day her son returned from the hospital; that a great many persons "inquired and called," but she did not remember anything in particular because she was under a terrific strain. About November, 1945, a picture of Officer Morgan was shown to her by Officer Nash and another officer, and she was asked if the person whose picture was then shown to her had been to her house. She

testified that she replied that she did not know, that she may have seen him but there was nothing definite about it.

In response to a hypothetical question based upon the assumption that the facts and testimony above stated were true and that the officer talked to Mrs. Paschek, a physician called as a witness by petitioner testified in substance that in his opinion Officer Morgan did contract poliomyelitis by his contact with the mother of the afflicted boy. A physician called as a witness by the respondents testified, in response to such hypothetical question, that in his opinion Officer Morgan did not contract poliomyelitis by his contact with the mother. He also testified that in his opinion, even if it be assumed additionally that the mother did have poliomyelitis at the time she talked with the officer, the officer did not contract poliomyelitis from the mother. A doctor of philosophy in medical sciences, who specializes in microbiology, was called as a witness by respondents. He testified, in response to such hypothetical question, that in his opinion it would be highly improbable that Officer Morgan contracted poliomyelitis by his contact with the mother. He also testified that during the month of September, 1945, 81 persons afflicted with poliomyelitis were admitted to the general hospital, which number was twice the average number of such admissions in the month of September over a five-year period.

The question as to whether the officer contracted the disease while he was in the discharge of his duty was a question of fact for the determination of the trial court. In this connection an important fact to be determined by the trial court was whether the officer talked to Mrs. Paschek. The evidence regarding this was, in substance, that Mrs. Paschek said that she did not remember such an event, and Officer Nash said that Officer Morgan told him that he had talked to "the mother." The court found that it was not true that Officer Morgan had talked to Mrs. Paschek on September 21, 1945. In view of the evidence that Mrs. Paschek did not remember the alleged call by the officer, that she returned from the hospital about 4 p. m. on that day, and that Officer Morgan went up on the porch about 4 p. m. and returned to the automobile before Officer Nash had finished his call at the house next door, the court might have concluded that Mrs. Paschek had not arrived home at the time the officer called at her house. The court was not required to accept as true the statement to the effect that Officer Morgan said he had talked

to "the mother," even though that statement was not contradicted. Other important facts to be determined by the court were whether the allegations were true that (1) on September 21, 1945, Mrs. Paschek showed symptoms of what appeared to be a head cold,· (2) on said date she was suffering from an abortive poliomyelitis, (3) she was a temporary carrier of that disease, and (4) the officer contracted poliomyelitis from Mrs. Paschek. The son testified, as above stated, that his mother had a slight cold the day he returned from the hospital; but the mother did not testify as to whether she had a cold at that time. The only other evidence as to whether she was suffering from an abortive poliomyelitis and was a carrier of that disease was the evidence that she was exposed to the disease while caring for the son. There was a substantial conflict in the expert testimony as to whether the officer contracted the disease from Mrs. Paschek. Also it appears, from the statistics above referred to, that the disease was prevalent in September, 1945. The court found that she did not have such symptoms, was not suffering from such disease, and was not such a carrier, and that the officer did not contract poliomyelitis from Mrs. Paschek. ▮▮ The burden was upon petitioner to show a causal relation between the duty performed by the officer and the immediate cause of the death. (*Lundrigan* v. *City of Los Angeles*, 82 Cal.App.2d 238, 252 [186 P.2d 12].) "Where the facts are such that contradictory inferences can reasonably be drawn from them, an appellate court will not substitute other inferences for those adopted by the" trier of the facts. (*Arundel* v. *Turk*, 16 Cal.App.2d 293, 296 [60 P.2d 486].) ▮▮ In determining the sufficiency of the evidence to support the findings, this court must resolve all conflicts in the evidence in favor of respondent. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 422 [159 P.2d 958].) The findings above mentioned are supported by the evidence.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.